Filed 7/1/13  P. v. Valenzuela CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

THE PEOPLE,

       Plaintiff and Respondent,

       v.

RAUL CASTRO VALENZUELA,

       Defendant ant Appellant.

F063102/F063301

(Super. Ct. Nos. BF135839A, BF131733A)

**OPINION**

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Wiseman, Acting P.J., Detjen, J. and Peña, J.

In case No. BF131733A, appellant, Raul Castro Valenzuela, pled no contest to transportation or sale of cocaine (Health & Saf. Code, § 11352, subd. (a)).[1] On July 26, 2010, the court suspended imposition of sentence and placed Valenzuela on probation for three years on condition that he serve one year in local custody.

In case No. BF135839A, a jury convicted Valenzuela of transportation or sale of cocaine (count 1), possession for sale of cocaine (count 2/§ 11351), possession for sale of methamphetamine (count 4/§ 11378), and driving without a valid driver's license (count 6/Veh. Code, § 12500, subd. (a)). In a separate proceeding, the court found true a prior conviction enhancement (§ 11370.2, subd. (a)) and revoked Valenzuela's probation in case No. BF133733A.

On August 9, 2011, the court sentenced Valenzuela in both cases to an aggregate term of nine years eight months as follows: the upper term of five years on count 1; a three-year prior conviction enhancement on that count; a one-year term on count 2 (one third the middle term of three years); an eight-month term on count 4 (one third the middle term of two years); time served on count 6; and a concurrent three-year term on Valenzuela's conviction for transportation or sale of cocaine in case No. BF131733A.

On appeal, Valenzuela contends: 1) the court erred in admitting a stipulation into evidence; and 2) the prosecutor engaged in prejudicial misconduct during his closing argument. We affirm.

## FACTS[2]

### *Valenzuela's Jury Trial*

The prosecution evidence established that on February 25, 2011, at approximately 12:40 p.m., after Valenzuela drove into a service station, Kern County Sheriff's Deputy

---

**1**      All further statutory references are to the Health and Safety Code, unless otherwise indicated.

**2**      The facts pertaining to case No. BF131733A are omitted because they are not germane to the issues Valenzuela raises on appeal.

2

John Coleman parked behind him. When Valenzuela exited his car, the deputy had Valenzuela approach him. Deputy Coleman asked Valenzuela if he had any drugs or anything illegal in his car and Valenzuela replied that he did not. Deputy Ernest Wahl then had his police canine sniff around the car's exterior and the dog "alerted." Deputy Wahl searched the interior and found a baggie containing 3.9 grams of cocaine, a baggie containing 1.1 grams of cocaine, and a baggie containing .7 grams of methamphetamine.

Deputy Coleman asked Valenzuela why there were drugs in the car when he said there would not be any and Valenzuela replied that they were for personal use. He also told Coleman that the larger baggie contained an "eight ball." Additionally, Coleman checked and determined that Valenzuela had never been issued a driver's license.

Coleman advised Valenzuela that he was under arrest and that the deputies were going to search Valenzuela's apartment. When Coleman asked Valenzuela if there were any narcotics at the apartment, Valenzuela told him that there might be about three grams that were leftover from the weekend when he was "partying."

During the search of Valenzuela's kitchen, deputies found 9.1 grams of cocaine on a coffee filter on a plate located in a cabinet. In the bathroom, the deputies found three baggies containing a total of 52.8 grams of cocaine and two baggies containing a total of 5.8 grams of methamphetamine. The search of the apartment also uncovered cutting agents, containers used to mix narcotics, packaging, digital scales, and acetone, which could be used to wash out impurities in the narcotics.

The deputies next searched Valenzuela's uncle's house. In the garage they found 101.67 grams of methamphetamine in one zip lock baggie, 86.5 grams of methamphetamine in a second baggie, 15.3 grams of cocaine in a third baggie, a digital scale, and a container filled with a cutting agent. The deputies also found $2,000 in currency in a jacket in a closet and $504 on a man who was at the residence.

Ivonne Lopez, Valenzuela's ex-girlfriend, testified she was living with Valenzuela when his apartment was searched. According to Lopez, Valenzuela paid for the household expenses by selling drugs.

Deputy Coleman testified as an expert that the drugs were possessed for sale and that on the day he was arrested, Valenzuela did not exhibit any objective signs of being under the influence of any narcotic. He also testified that during the searches, the deputies did not find any paraphernalia associated with personal use of cocaine or methamphetamine.

The defense did not present any evidence.

## DISCUSSION

### The Stipulation

Prior to the taking of testimony the prosecutor moved in limine to use Valenzuela's prior conviction for transportation or sale of cocaine to impeach Valenzuela if he testified and to prove Valenzuela's knowledge that the drugs recovered in the instant matter were controlled substances and his intent in possessing them. After noting that defense counsel moved in limine to exclude evidence of Valenzuela's prior conviction, the court stated that it would take the defense motion under submission. Defense counsel then offered to stipulate that Valenzuela knew the narcotic character of the drugs that were found during the searches. However, after the prosecutor stated he still wanted to use the conviction to prove Valenzuela's intent in possessing the drugs, the court noted Valenzuela's Evidence Code section 352[3] objection to the introduction of the prior conviction and took the matter under submission.

---

[3] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

4

On the next court date, the court ruled it would allow the prosecutor to use Valenzuela's prior conviction to prove Valenzuela's intent in possessing the drugs. The following day, however, the prosecutor advised the court that he would not be seeking to admit Valenzuela's prior conviction to prove intent and that he accepted the defense's "stipulation as to the element of knowledge of the substances being controlled substances." Just prior to the prosecutor resting, the court read to the jury the following stipulation by the parties: "The parties hereby stipulate that defendant has knowledge of methamphetamine and cocaine and knows them both to be controlled substances." The court then admonished the jury, in effect, that the stipulation went only to Valenzuela's knowledge of the "nature and controlled substance status" of the drugs involved in the case.

Valenzuela appears to contend the stipulation was akin to evidence of prior bad acts and that the court erred in admitting this evidence because: 1) it did not engage in the requisite weighing process pursuant to Evidence Code section 352; and 2) the prejudicial impact of admitting this evidence outweighed its probative value. We reject these contentions.

> "A party to a criminal action can, however, and with binding effect, stipulate to evidentiary matters and to the existence or nonexistence of facts [citation] and to any of the steps of an action or proceeding. [Citations.] A binding stipulation admitting evidence may be made, even if such evidence is otherwise inadmissible. It also is held that, by stipulation, a criminal defendant may waive benefits granted to him by the Constitution." (*Leonard v. City of Los Angeles* (1973) 31 Cal.App.3d 473, 476.)

Since Valenzuela offered the stipulation into evidence jointly with the prosecution, he is bound by it and there is no merit to his claim that the court erred in admitting the stipulation into evidence. In any event, the stipulation did not constitute evidence of prior bad acts and it did not prejudice him.

> "'Evidence of uncharged offenses "is so prejudicial that its admission *requires extremely careful analysis.* [Citations.]" [Citations.]' [Citation] Further, 'to be admissible such evidence "must not contravene

5

other policies limiting admission, such as those contained in Evidence Code section 352. [Citations.]" [Citation.]' [Citation.] Thus, we are required 'to examine whether the probative value of the evidence of defendant's uncharged offenses is "substantially outweighed by the probability that its admission [would] ... create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)' [Citation.]" (*People v. Lopez* (2011) 198 Cal.App.4th 698, 714-715 (*Lopez*).)

"[T]he erroneous admission of other crimes evidence is harmless if it does not appear reasonably probable that without the error a result more favorable to the defendant would have been reached." (*Lopez, supra*, 198 Cal.App.4th at p. 716.)

The parties stipulated only that Valenzuela knew cocaine and methamphetamine were controlled substances. Further, since it is common knowledge that these drugs are controlled substances, the stipulation did not implicate Valenzuela in any prior bad acts because its only import was that Valenzuela was aware of these familiar facts.

Further, the introduction of the stipulation could not have prejudiced Valenzuela because the evidence of his guilt was overwhelming and unrebutted. The prosecution's evidence showed that a search of Valenzuela's car uncovered three baggies that cumulatively contained substantial amounts of drugs. At Valenzuela's apartment the deputies found 9.1 grams of cocaine in the kitchen and 52.8 grams of cocaine and 5.8 grams of methamphetamine in the bathroom. The deputies also found packaging, cutting agents that could be used to dilute the cocaine, acetone that could be used to remove impurities from it, and a digital scale. Additionally, Valenzuela's girlfriend testified he paid their living expenses with proceeds from the sale of drugs, and Deputy Coleman testified as an expert that the drugs were possessed for sale and that Valenzuela was not under the influence of drugs when he was arrested. Moreover, Valenzuela lied when he told the deputies there were no drugs in his car and only three grams of drugs at his apartment, and the deputies did not find in Valenzuela's car or in his apartment any paraphernalia associated with personal use of cocaine or methamphetamine. Further, we must presume the jurors followed the court's instruction that they were to consider the

6

stipulation only in determining whether Valenzuela had knowledge of the nature and "controlled substance status" of the cocaine and methamphetamine involved in the case. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Accordingly, we conclude the court did not err when it admitted the stipulation into evidence and that, in any event, the admission could not have prejudiced Valenzuela.

### The Alleged Prosecutorial Misconduct

During the prosecutor's rebuttal closing argument, the court overruled the defense's objection to the following argument:

> "Their defense is personal use because that's all they remotely have. There is no doubt that he possessed the drugs, so they can't argue that element. There's only so many elements they can attack. And as you predicated (*sic*) that's the only one they believe they can attack, because he can't say the drugs belonged to somebody else because he already admitted the drugs were his. He can't say that an alien came down and planted cocaine and meth in his car.

> "No one is going to believe that anything belongs to Ivonne Lopez in this case, and he knew that. So, he thought it would be okay to take the fall and say, [']yeah, it's mine, but it's for personal use.['] But that just doesn't make sense.

> "There is no evidence of personal use. Defense counsel saying he looks under the influence in this picture. To me, I don't think there's much difference between how he looked then and how he looks now. So, what is [defense counsel] saying, if he was under the influence in this picture? Deputy Coleman who does this for a living didn't notice any objective symptoms. *And while the defense doesn't have to bring forward any witnesses since it's my burden to prove this case, there's no expert witness coming in to rebut Coleman's testimony.*" (Italics added.)

Valenzuela contends that through the italicized portion of the quoted argument, the prosecutor shifted the burden of proof to Valenzuela such that Valenzuela was required to prove his innocence beyond a reasonable doubt in violation of his right to due process. We disagree.

7

"A prosecutor may fairly comment on and argue any reasonable inferences from the evidence. [Citation.] Comments on the state of the evidence or on the defense's failure to call logical witnesses, introduce material evidence, or rebut the People's case are generally permissible. [Citation.] However, a prosecutor may not suggest that 'a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence.' [Citations.]" (*People v. Woods* (2006) 146 Cal.App.4th 106, 112.) "A defendant's conviction will not be reversed for prosecutorial misconduct unless it is reasonably probable that the jury would have reached a result more favorable to the defendant had the misconduct not occurred." (*People v. Zambrano* (2004) 124 Cal.App.4th 228, 243.)

The italicized portion of the prosecutor's argument merely pointed out the defense had not rebutted Deputy Coleman's expert testimony that Valenzuela was not under the influence when he was arrested and it clearly advised the jury that the prosecutor had the burden of proof. Accordingly, we reject Valenzuela's contention the prosecutor engaged in misconduct during his closing argument.

Alternatively we conclude any prosecutorial misconduct was harmless. As previously explained, the evidence of Valenzuela's guilt was overwhelming and unrebutted. Therefore, it is not reasonably probable Valenzuela would have received a more favorable result absent the alleged misconduct.

## **DISPOSITION**

The judgment is affirmed.